UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------

UNITED STATES OF AMERICA,

              Plaintiff,

        -against-

NEW YORK CITY HOUSING
AUTHORITY,

             Defendant.

---------------------------------

18cv5213

<u>OPINION & ORDER</u>

WILLIAM H. PAULEY III, Senior United States District Judge:

        On June 11, 2018, the United States filed an 80-page complaint offering a glimpse into NYCHA's pervasive violations of federal health and safety regulations. The complaint paints a damning picture of systemic indifference to peeling lead paint, mold, insufficient heat, broken elevators, pests, and vermin plaguing NYCHA apartments. In addition, the complaint describes a culture infested with dysfunction and deceit. These violations are not abstract, but take a tangible toll on NYCHA's tenants—hundreds of whom have submitted public comments in advance of a hearing on the Government's motion for approval of a proposed consent decree (the "Proposed Consent Decree").

        Various entities purport to represent the tenants' interests, including the two that seek to intervene in this action. The City-Wide Council of Presidents, Inc. ("CCOP") is an elected body comprised of NYCHA tenant leaders. (Declaration of Daniel Barber in Support of Motion to Intervene, ECF No. 36 ("Barber Decl.") ¶¶ 2-4.) At-Risk Community Services, Inc. ("At-Risk," and together the CCOP, the "Proposed Intervenors") is a non-profit organization whose mission is "to secure human rights and economic justice for public housing residents in

New York City." (Declaration of Eliezer Hecht in Support of Motion to Intervene, ECF No. 37 ("Hecht Decl.") ¶ 2.) Days after the Government filed the complaint and Proposed Consent Decree, CCOP and At-Risk sought leave to intervene under Rule 24 of the Federal Rules of Civil Procedure.

Undoubtedly, and as the Proposed Intervenors explain, the NYCHA tenants' voices are important and must be heard. But it does not follow that they must necessarily be signatories to the Proposed Consent Decree, cf. Doe v. Pataki, 481 F.3d 69 (2d Cir. 2007) (noting that consent decrees essentially "reflect a contract between the parties"), or that they are entitled to intervene as full-fledged parties to a government enforcement action. Rather, the procedural device of intervention is designed to balance the "efficient administrati[on] of legal disputes by resolving all related issues in one lawsuit" with the need to ensure that the lawsuit does not "becom[e] unnecessarily complex, unwieldy or prolonged." United States v. Pitney Bowes, Inc., 25 F.3d 66, 69 (2d Cir. 1994). The requirements of Rule 24 and the competing considerations that undergird them cannot be sacrificed on the altar of public outrage and opprobrium, no matter how justified. Cf. Habitat for Horses v. Salazar, 2011 WL 4343306, at *1 (S.D.N.Y. Sept. 7, 2011) ("[T]his Court is bound to follow the law, not its sympathies."). The Proposed Intervenors do not make a sufficient showing to intervene of right on the facts of this case. But permissive intervention—albeit limited as set forth in this Opinion & Order—is warranted. Accordingly, the Proposed Intervenors' motion is granted in part.

## DISCUSSION

I. Intervention of Right

To intervene of right under Rule 24(a)(2), a proposed intervenor must (1) file a timely motion; (2) "assert[] an interest relating to the property or transaction that is the subject of

the action"; (3) demonstrate that "without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest"; and (4) show that its "interest is not adequately represented by the other parties." MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006). As this Circuit has underscored, "'[f]ailure to satisfy any one of these four requirements is a sufficient ground to deny the application.'" Floyd v. City of New York, 770 F.3d 1051, 1057 (2d Cir. 2014) (alteration and emphasis in original) (citations omitted).

At the outset, the parties do not take issue with the timeliness of the Proposed Intervenors' motion. Turning to whether the Proposed Intervenors have asserted a cognizable interest, a "proposed intervenor must have a 'direct, substantial, and legally protectable' interest in the subject matter of the action," and intervention "cannot be used as a means to inject collateral issues into an existing action." United States v. City of New York, 198 F.3d 360, 365 (2d Cir. 1999) (citations and quotation marks omitted). In other words, an interest that is "remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." United States v. Peoples Benefit Life Ins. Co., 271 F.3d 411, 415 (2d Cir. 2001) (citations and quotation marks omitted). The Proposed Intervenors tether their bid for intervention of right to several purported interests, asserting that (1) NYCHA tenants have an interest in decent, safe, and sanitary housing; (2) 24 C.F.R. § 964.100 and 42 U.S.C. § 1437c-1 entitle tenants to participate in NYCHA's operations and management, and 12 U.S.C. § 1701u requires NYCHA to offer tenants certain employment and economic opportunities; (3) NYCHA tenants possess an economic interest based on their payment of rent; and (4) At-Risk has an interest in securing safe and habitable living conditions for NYCHA tenants.

3

Here, the parties and the Proposed Intervenors quarrel over the extent to which the federal statutes and regulations cited by the Proposed Intervenors provide NYCHA tenants with a role in managing NYCHA's facilities or opportunities for meaningful economic and employment benefits. But whatever interest or right they may have in playing such a managerial role or receiving such opportunities is tangentially related to the subject matter of this litigation—i.e., NYCHA's pervasive violations of federal health and safety regulations and deception of federal regulators. Introducing these collateral issues would only spawn additional litigation outside the scope of this action.[1] Cf. Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990) (explaining that Rule 24 does not allow for intervenors to alter the scope of the litigation to create a different lawsuit).

Similarly, the Proposed Intervenors' asserted economic interest based on their payment of rent is unavailing. For one thing, Rule 24(a)(2) requires a direct interest in the subject matter of the litigation. However, the Government's lawsuit does not concern NYCHA's rent-collection practices. If such an economic interest could constitute a cognizable interest to intervene in any case involving NYCHA, it is hard to imagine why, by the same token, any bank customer who pays account fees could not seek to intervene in any enforcement proceeding against that bank.

At-Risk's articulated interest in helping NYCHA residents secure safe and habitable living conditions is a closer call. The parties seek to cabin the propriety of intervention by advocacy groups to defending federal agency action in lawsuits brought by other advocacy groups challenging that agency action. While this Court is not convinced that an advocacy group

---

[1] The Proposed Intervenors also bring claims in state court to demand recourse for NYCHA's failure to provide its tenants with meaningful employment and economic opportunities as well as its failure to permit its tenants to participate in NYCHA's operations and management.

4

may never assert a cognizable interest outside of that narrow circumstance, the Proposed Intervenors' contention that At-Risk possesses a sufficient interest based solely on its mission to ensure human rights and economic justice for NYCHA tenants is not enough on these facts. Intervention "is concerned with something more than standing to sue: it is concerned with protecting an interest which practically speaking can only be protected through intervention in the current proceeding." United States v. City of New York, 179 F.R.D. 373, 378 (E.D.N.Y. 1998) (citation and quotation mark omitted) (emphasis in original). Stated differently, "the interest that the proposed intervenors have to show . . . is that they have a direct, substantial, and legally protectable interest in this suit." City of New York, 179 F.R.D. at 378 (emphasis in original). While the safety and habitability of NYHCA housing is central to this action, At-Risk's interest in assisting NYCHA tenants in addressing those conditions is a step removed. And even assuming that At-Risk's asserted interest is cognizable, there is no suggestion that the disposition of this action would impair—as a practical matter—At-Risk's ability to protect that interest through advocacy, education, or litigation.

On the other hand, the NYCHA tenants' interest in decent, safe, and sanitary housing suffices. Contrary to the parties' sanitized characterization, this interest is more than a generalized interest in living conditions. It is a substantial interest that strikes at the heart of this litigation. Such an interest would also be impaired by an adverse decision in this case. Cf. CBS Inc. v. Snyder, 136 F.R.D. 364, 367 (examining the "intimately related" requirements of the "nature of the applicant's interest and the effect that the disposition of the action may have on his ability to protect that interest"). An unfavorable disposition—for example, as to whether NYCHA complied with its obligation to provide decent, safe, and sanitary housing—may have some preclusive effect that impairs the Proposed Intervenors' ability to prosecute similar claims

5

in their state court case.[2]  See Allco Fin. Ltd. v. Etsy, 300 F.R.D. 83, 87 (D. Conn. 2014) (citation and quotation mark omitted) (explaining that the "inquiry into impairment of interest looks to the practical disadvantage suffered"); Republic of the Phil. v. Abaya, 312 F.R.D. 119, 124 (S.D.N.Y. 2015) (citation and quotation mark omitted) ("[I]mpairment . . . can be satisfied by asserting that as a practical matter, an adverse decision may compromise the party's claims.").

As an aside, the parties maintain that impairment requires a showing of "formal legal prejudice."  However, the cases they cite are distinguishable because they merely articulate the showing that a non-settling party must make to object to a partial settlement—an analytically distinct question from whether a non-party possesses a legally sufficient interest in joining an action.  See Bhatia v. Piedrahita, 756 F.3d 211, 218 (2d Cir. 2014).  But see Anwar v. Fairfield Greenwich Ltd., 133 F. Supp. 3d 560, 563 (S.D.N.Y. 2015) (finding—without addressing any of the Rule 24(a) requirements—that a proposed intervenor had not shown "formal legal prejudice" in denying pre-motion request in anticipation of a motion to intervene to object to a settlement).

Nonetheless, intervention of right is denied because the Proposed Intervenors have not shown that the Government cannot adequately represent the NYCHA tenants' interest in decent, safe, and sanitary housing.  The "proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as parens patriae."  City of New York, 198 F.3d at 367; accord United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 985 (2d Cir. 1984).  While the Proposed Intervenors may be dissatisfied with the Proposed Consent Decree's funding provisions and their role in its negotiation and

---

[2] To be sure, any preclusive effect of a disposition in this case on the Proposed Intervenors' state lawsuit is a matter to be decided by that court.  See Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC, 289 F. Supp. 3d 582, 594 (S.D.N.Y. 2018) (citation omitted).  But a proposed intervenor need not conclusively demonstrate that preclusion principles would affect their claims in another action.  Cf. Md. Cas. Co. v. W.R. Grace & Co., 1996 WL 34154, at *2 (S.D.N.Y. Jan. 30, 1996).  The point is that if this Court were to reject the Proposed Consent Decree, an adverse disposition in this case as to the safety and habitability of NYCHA housing could directly disadvantage the Proposed Intervenors' ongoing attempts to litigate that issue elsewhere.

implementation, "[r]epresentation is not inadequate simply because 'the applicant would insist on more elaborate . . . pre-settlement procedures or press for more drastic relief." City of New York, 198 F.3d at 367 (adding that representation is not inadequate simply because the applicant and existing parties "have different ideas about how best to achieve" the goals of the litigation). Moreover, although the burden of showing inadequacy is generally "minimal," the Second Circuit "ha[s] demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir. 2001) (citations and quotation marks omitted). Here, the NYCHA tenants' ultimate objective of decent, safe, and sanitary housing is subsumed within the Government's objective in bringing this action—the Proposed Intervenors do not suggest that there is any evidence of collusion, incompetence, nonfeasance, or any other badges of inadequacy on the part of the Government. See Butler, Fitzgerald & Potter, 250 F.3d at 180.

Ultimately, the Proposed Intervenors take issue with the adequacy of the Proposed Consent Decree and seek intervention to secure more favorable terms of settlement that they would also approve. Intervention, however, "is not an avenue for advancing the competing agendas of non-parties to a settlement." SEC v. Bear, Stearns & Co., 2003 WL 22000340, at *2 (S.D.N.Y. Aug. 25, 2003). Moreover, a district court only "has the power to enter or reject such a judgment, not to alter it." SEC v. Petro-Suisse Ltd., 2013 WL 5348595, at *3 (S.D.N.Y. Sept. 25, 2013). To the extent that the Proposed Intervenors urge that the Proposed Consent Decree be rejected as inadequate and re-negotiated because they disagree with the scope of the NYCHA tenants' role or the sufficiency of the funding provisions, such considerations of adequacy are excluded from the standard governing approval of proposed consent judgments involving an enforcement agency. SEC v. Citigroup Glob. Mkts., Inc., 752 F.3d 285, 294 (2d Cir. 2014)

(clarifying that "[a]bsent a substantial basis in the record" for concluding that the proposed consent decree is not fair, reasonable, or in the public interest, "the district court is required to enter the order"). Fundamentally, any arguments regarding whether the Proposed Consent Decree is fair, reasonable, and in the public interest should be addressed by opposing the pending motion for approval of the Proposed Consent Decree.

II.     Permissive Intervention

Even if intervention of right is unavailable, a court may still "permit a party to intervene if the party 'has a claim or defense that shares with the main action a common question of law or fact.'" SEC v. Caledonian Bank Ltd., 317 F.R.D. 358, 368 (S.D.N.Y. 2016) (quotation marks and citations omitted); see also Fed. R. Civ. P. 24(b). The words "claim or defense" are not "read in a technical sense, but only require some interest on the part of the applicant." Louis Berger Grp., Inc. v. State Bank of India, 802 F. Supp. 2d 483, 488 (S.D.N.Y. 2011) (quotation mark omitted). Whether to grant permissive intervention is entirely within the discretion of the trial court, U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978), and "courts applying Rule 24 'must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases,'" Kamdem-Ouaffo v. Pepsico, Inc., 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (citation omitted).

Of course, a court "must consider whether granting permissive intervention will unduly delay or prejudice the adjudication of the rights of the existing parties." In re Holocaust Victim Assets Litig., 225 F.3d 191, 202 (2d Cir. 2000) (citation and quotation marks omitted); Pitney Bowes, Inc., 25 F.3d at 73 (characterizing undue delay or prejudice to the adjudication of the rights of the original parties as "[t]he principal guide in deciding whether to grant permissive intervention"). However, other considerations include "whether the applicant will benefit by

intervention," "the nature and extent of the intervenors' interests, whether their interests are adequately represented by the other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal issues presented." U.S. Postal Serv., 579 F.2d at 191-92 (quotation marks omitted).

Based on the facts of this case, this Court exercises its informed discretion to grant permissive intervention for the limited purpose of opposing the Proposed Consent Decree. See Chevron Corp. v. Donziger, 2011 WL 2150450, at *5 (S.D.N.Y. May 31, 2011) (citing Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 378 (1987)) (noting that courts have discretion "to limit the scope of any intervention"). This strikes an appropriate balance between the Proposed Intervenors' interests and the parties' interest in the expeditious determination of whether the Proposed Consent Decree should be approved. Most importantly, affording the Proposed Intervenors an opportunity to oppose the motion for approval of the Proposed Consent Decree will not delay adjudication of that motion. Likewise, limiting the scope of intervention to opposing entry of the Proposed Consent Decree will not extend these proceedings by requiring re-negotiation of the agreement. Cf. In re Holocaust Victim Assets Litig., 225 F.3d at 202 (affirming denial of permissive intervention based on the trial court's finding that "intervention would prejudice the adjudication of the rights of the existing parties by destroying their [s]ettlement"); Pitney Bowes, Inc., 25 F.3d at 73-74 (finding no abuse of discretion in denial of permissive intervention where trial court found that the parties "had already agreed to the terms of the consent decree, and that intervention would require renegotiation").

Moreover, while the Proposed Intervenors' failure to show inadequate

representation of its interest in decent, safe, and sanitary housing warrants denial of intervention of right, the adequacy of representation is "clearly a minor factor at most" that may be considered in deciding whether to grant permissive intervention. Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc., 2017 WL 6459464, at *13 (E.D.N.Y. Dec. 15, 2017) (citations and quotation marks omitted). Thus, "while existing adequate representation may militate against allowing permissive intervention, such intervention may still be appropriate if the addition of the intervenors will 'assist in the just and equitable adjudication of any of the issues between the parties.'" Allco Fin. Ltd., 300 F.R.D. at 88 (citation omitted); see also Oneida Grp. Inc., 2017 WL 6459464, at *13 (collecting cases in which "courts have found permissive intervention warranted even where there was adequate representation"). This is one of those cases. In view of the substantial public interest at stake and continuing revelations of NYCHA's dysfunction, limited intervention by the Proposed Intervenors will provide this Court with a fuller picture to evaluate the fairness, reasonableness, and equities of the Proposed Consent Decree and contribute to a just and equitable adjudication of the motion for approval.

Finally, the parties warn that permitting intervention could open the floodgates to hundreds of additional individuals or entities seeking to intervene. In this Court's view, these concerns are overblown. The Proposed Consent Decree and this action—now pending for over three months—have been the subject of scores of editorials and news articles. Thus, any new applications to intervene may well be untimely. In addition, the public hearing in this action is now less than two weeks away. Entertaining any further motions to intervene would all but result in further delay of these proceedings and prejudice to the parties and members of the public.

CONCLUSION

For the foregoing reasons, CCOP and At-Risk's motion is granted in part. Intervention is granted solely for the limited purpose of opposing the Proposed Consent Decree and as otherwise limited by this Opinion & Order. This Court may, in its discretion, revise the scope of this limited intervention as this action unfolds. Any opposition papers by CCOP and At-Risk shall be filed by September 21, 2018, and any reply papers shall be filed by September 24, 2018. Paragraphs 9 and 10 of this Court's July 13, 2018 Scheduling Order are vacated. The Clerk of Court is directed to terminate the motion pending at ECF No. 34.

Dated: September 13, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.